IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


| | | |
|---|---|---|
| NTP MARBLE, INC., t/a COLONIAL MARBLE & GRANITE, Plaintiff/Counterclaim Defendant, | : : : : | CIVIL ACTION |
| v. | : : | |
| AAA HELLENIC MARBLE, INC., Defendant/Crossclaim Plaintiff/ Counterclaim Plaintiff, NICHOLAS ALEXIADAS, Defendant/Crossclaim Plaintiff/ Counterclaim Plaintiff, RICHARD MOSER, Defendant/Crossclaim Defendant, JOHN AND JANE DOES (1-10), Defendants, DOE ENTITIES (1-10), Defendants. | : : : : : : : : : : : | No.: 09-cv-5783 |

**M E M O R A N D U M**

SITARSKI, M.J.                                                                                                  June 30, 2011

Currently pending before the Court is a Motion to Dismiss Counterclaims filed by Plaintiff NTP Marble, Inc. t/a Colonial Marble & Granite. For the following reasons, the motion will be **GRANTED IN PART** and **DENIED IN PART**.

I.     PROCEDURAL HISTORY

On December 4, 2009, Plaintiff NTP Marble, Inc., t/a Colonial Marble & Granite ("Colonial") initiated this lawsuit by filing a Complaint against Doe Defendants, alleging violations of the Lanham Act, 15 U.S.C. § 1051 *et. seq.*, and defamation in connection with

statements published online. Through discovery (including a Third Party Subpoena served on Google, Inc.), Plaintiff learned the identities of several parties to this lawsuit.

On July 21, 2010, Plaintiff Colonial filed an Amended Complaint, naming AAA Hellenic Marble, Inc. ("Hellenic"), Nicholas Alexiadas and Jessica Alexiadas as defendants. On April 26, 2011, Plaintiff Colonial filed a Second Amended Complaint, dropping Jessica Alexiadas as a defendant and naming Richard Moser as a defendant. The Second Amended Complaint alleges Lanham Act violations of false advertising and false designation of origin (15 U.S.C. § 1125) and defamation against Defendants Hellenic, Nicholas Alexiadas and Richard Moser.

On May 9, 2011, Defendants Hellenic and Nicholas Alexiadas filed their Answer to the Second Amended Complaint, along with a Crossclaim against Defendant Richard Moser and four Counterclaims against Plaintiff Colonial. Hellenic alone filed a Counterclaim for violation of Section 1125 of the Lanham Act (15 U.S.C. § 1125); Hellenic and Nicholas Alexiadas both filed a Counterclaim for defamation; and Nicholas Alexiadas alone filed two Counterclaims for intentional infliction of emotional distress and negligent infliction of emotional distress.

This matter was initially assigned to District Court Judge Juan R. Sánchez. On May 12, 2011, the parties consented to the exercise of jurisdiction by a United States Magistrate Judge under 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 and the matter was referred to me. (Doc. No. 57)

On May 20, 2011, Plaintiff Colonial filed the present Motion to Dismiss Counterclaims of Defendants Hellenic and Nicholas Alexiadas. (Doc. No. 60). On June 6, 2011, Defendants Hellenic and Nicholas Alexiadas filed a Response in Opposition to Plaintiff's Motion to Dismiss Counterclaims (Doc. No. 65); on June 15, 2011, Plaintiff Colonial filed a Reply in Further Support of Motion to Dismiss Counterclaims (Doc. No. 71); and on June 20, 2011, Defendants

Hellenic and Nicholas Alexiadas filed a Sur Reply to Plaintiff's Reply in Further Support of Motion to Dismiss Counterclaims (Doc. Nos. 73 and 74).[1]

## II.   STANDARD OF REVIEW

In analyzing a motion to dismiss pursuant to Rule 12(b)(6), the Court must "accept all factual allegations as true, construe the [counterclaim] in the light most favorable to the [non-moving party], and determine whether, under any reasonable reading of the [counterclaim], the [non-moving party] may be entitled to relief." *Fowler v. UMPC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (*quoting Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)) (internal quotations omitted).  Courts are not bound, however, to accept as true legal conclusions couched as factual allegations.  *Papasan v. Allain*, 478 U.S. 265, 286 (1986).  "Generally, in ruling on a motion to dismiss, a district court relies on the complaint, attached exhibits, and matters of public record."  *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007) (citing *Pension Benefit Guar. Corp. v. White Consol. Industries, Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

"To survive a motion to dismiss, a [counterclaim] must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[This] plausibility standard is not . . . a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (internal quotations omitted).  Under this standard, the court assesses the "well-pleaded, nonconclusory factual allegation[s] [of the

---

[1] For an unknown reason, Defendants' Sur Reply was docketed in duplicate as both Doc. Nos. 73 and 74.

3

defendant's counterclaim] . . . to determine" whether it states a plausible claim for relief. *Iqbal*, 129 S.Ct. at 1950.

III. DISCUSSION

    A.    COUNTERCLAIM COUNT I - VIOLATION OF THE LANHAM ACT

Count I of Defendant Hellenic's Counterclaim is based on false advertising under the Lanham Act. Section 43(a)(1)(B) of the Lanham Act provides in relevant part:

> (a)(1) Any person who, on or in connection with any goods or services, ... uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any ... false or misleading description of fact, or false or misleading representation of fact, which--
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(B). To make out a false advertising claim under the Lanham Act, one must allege that "(1) the [counterclaim] defendant has made false or misleading statements as to his or her or another's product or services; (2) there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; (3) the deception is material in that it is likely to influence purchasing decisions; (4) the advertised goods traveled in interstate commerce; and (5) there is a likelihood of injury to the plaintiff in terms of declining sales and loss of good will." *ZS Assocs., Inc. V. Synygy, Inc.*, 2011 WL 2038513 at *7 (E.D.Pa. May 23, 2011) (*quoting Synygy, Inc. v. Scott-Levin, Inc.*, 51 F.Supp.2d 570, 575 (E.D.Pa. 1999)).

Additionally, under Section 43(a)(1)(B) of the Lanham Act, a counterclaim plaintiff must

4

prove either that the commercial message or statement is literally false, or literally true or ambiguous, but has the tendency to deceive consumers. *Santana Prods., Inc. v. Bobrick Washroom Equip., Inc.*, 401 F.3d 123, 136 (3d Cir. 2005); *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578, 586 (3d Cir. 2002).

Plaintiff Colonial first argues that Count I of Defendant Hellenic's Counterclaim should be dismissed for failure to plead the required nexus with interstate commerce as required under the Act. The Lanham Act has been interpreted as "confer[ring] broad jurisdictional powers upon the courts of the United States," and the commerce requirement in particular has been broadly interpreted. *Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 165 (3d Cir. 2001) (*citing Steele v. Bulova Watch Co.*, 344 U.S. 280, 283 (1952)); (*U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia*, 898 F.2d 914, 922 (3d Cir. 1990)). "The term 'commerce,' as used in the [Lanham] Act, refers to 'all commerce which may lawfully be regulated by Congress.'" *Id*. (*quoting* 15 U.S.C. § 1127). In *Highmark*, the court found a sufficient nexus with interstate commerce where a newspaper was distributed interstate, thus an ad appeared outside the state of Pennsylvania, and "the ad [within the newspaper] might have an impact on the parties outside of Pennsylvania." *Id*. Similarly, Defendant Hellenic's Counterclaim avers: "Colonial Marble's . . . conduct has [] resulted in widespread dissemination of the content and subject matter of its Press Release and corresponding statements of its President and counsel in interstate commerce via the Internet and in the news media." (Def. Counterclaim ¶ 22). The fact that the press release was accessible through the Internet caused it to appear outside of Pennsylvania, where it might also have an impact on parties outside the state. Therefore, Count I of Defendant Hellenic's Counterclaim meets the Lanham Act's interstate commerce requirement.

Plaintiff Colonial next argues that Defendant Hellenic's Count I should be dismissed for failure to adequately plead that the press release is either literally false, or is literally true or ambiguous with a tendency to deceive consumers. "In analyzing whether an advertisement . . . is literally false, a court must determine, first, the unambiguous claims made by the advertisement . . . and second, whether those claims are false." *Novartis*, 290 F.3d at 586 (*citing Clorox Co. v. Proctor & Gamble Commercial Co.*, 228 F.3d 24, 34 (1st Cir. 2000)). A "literally false" message can be either explicit or conveyed by implication, however "[t]he greater the degree to which a message relies upon the viewer or consumer to integrate its components and draw the apparent conclusion, . . . the less likely it is that a finding of literal falsity will be supported." *Id.* (*quoting United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1181 (8th Cir. 1998)).

Viewing the facts contained in Count I of Defendant's Counterclaim as true, and in the light most favorable to the non-moving party, it is plausible that neither Hellenic nor Nicholas Alexiadas had any knowledge of Richard Moser's actions, and did not instruct or aid him in posting the fabricated negative reviews online. If this is the case, Colonial's press release, which explicitly states that Hellenic and Nicholas Alexiadas initiated and carried out this negative publicity campaign, might be determined to be false. Accordingly, Count I of Defendant Hellenic's Counterclaim meets the pleading requirements for a violation of the Lanham Act, and Plaintiff's motion to dismiss Count I will be denied.

### B. COUNTERCLAIM COUNT II - DEFAMATION

Count II of Defendants', Hellenic and Nicholas Alexiadas, Counterclaim is for defamation under Pennsylvania state law. The underlying purpose of defamation law is "to compensate an individual [or entity] for pecuniary harm to one's reputation inflicted by a

6

defamatory statement." *Am. Bd. of Internal Medicine v. Von Muller*, 2011 WL 857337 at *8 (E.D.Pa. Mar. 10, 2011) (*citing Mzmane v. Winfrey*, 693 F.Supp.2d 422, 471 (E.D.Pa. 2010)) (citation omitted). "A statement is defamatory if it 'tends so to harm the reputation of another as to lower him or her in the estimation of the community or to deter third persons from associating or dealing with him or her,' or if it 'ascribes to another conduct, character or condition that would adversely affect his fitness for the proper conduct of his proper business, trade or profession.'" *Von Muller*, 2011 WL 857337 at *8 (citations omitted). In an action for defamation, the plaintiff has the burden of proving, when the issue is properly raised:

> (1) The defamatory character of the communication, (2) Its publication by the defendant, (3) Its application to the plaintiff, (4) The understanding by the recipient of its defamatory meaning, (5) The understanding by the recipient of it as intended to be applied to the plaintiff, (6) Special harm resulting to the plaintiff from its publication, and (7) Abuse of a conditionally privileged occasion.

42 Pa.C.S. 8343(a).

Additionally, "a plaintiff must plead a specific monetary or out-of-pocket loss as a result of the defamation" to satisfy the "special harm" requirement of the statute. *Cornell Cos., Inc. v. Borough of New Morgan*, 512 F.Supp.2d 238, 271 (E.D.Pa. 2007) (*quoting Synygy, Inc.*, 51 F.Supp.2d at 580). However, the special harm requirement is eliminated if the words constitute defamation per se; defamation per se can be either "words imputing (1) criminal offense, (2) loathsome disease, (3) business misconduct, or (4) serious sexual misconduct." *Id.* (*citing Synygy, Inc.*, 51 F.Supp.2d at 580); (*quoting Clemente v. Espinosa*, 749 F.Supp. 672, 677 (E.D.Pa. 1990)). More specifically, and of relevance to the instant claim, "[a] statement is defamatory per se as an accusation of business misconduct if it 'ascribes to another conduct,

7

characteristics or a condition that would adversely affect his fitness for the proper conduct of his lawful business.'" *Synygy, Inc.*, 51 F.Supp.2d at 580 (*quoting Clemente*, 749 F.Supp. 677-78).

In Count II, Defendants, Hellenic and Nicholas Alexiadas, allege that Colonial published the press release which contains statements that Hellenic and Alexiadas "launched an anonymous, deliberate, defamatory campaign against Colonial over the internet." (Def. Counterclaim ¶ 9.2). These statements both harm Defendants' reputation in the estimation of their communities, and deter others from dealing with them. Plaintiff Colonial admits to publishing the statements, the statements refer to Hellenic and Nicholas Alexiadas by name, and the purchasing public can easily understand the defamatory nature of the statements, and that they are directed at Defendants. Therefore, the pleading requirements of criteria one through five of a defamation claim are satisfied; criterion seven is inapplicable since no conditional privilege is alleged; and criterion six is satisfied by the defamation per se exemption for business misconduct, since the statements ascribe to Hellenic and Nicholas Alexiadas conduct that would adversely affect their fitness for the proper conduct of lawful business.

Plaintiff argues that Count II of Defendants' Counterclaim should be dismissed because their press release is substantially true, and therefore non-defamatory. Plaintiff argues that their press release is substantially true because a Hellenic employee published some of the fabricated negative reviews from Nicholas Alexiadas's home. However, Defendant Richard Moser's affidavit and deposition expressly state that neither Hellenic nor Nicholas Alexiadas had any knowledge of or connection to the publishing of the negative reviews.[2] As such, Plaintiff's press

---

[2] Both Richard Moser's affidavit and deposition transcript are cited within the body of Defendants' Counterclaim, and they are attached to Defendants' Counterclaim as Exhibits H and I, respectively. Documents whose contents are alleged in the pleading and whose authenticity no

release, which specifically names Hellenic and Nicholas Alexiadas as the "perpetrators" of the defamatory campaign, has a much "different effect on the mind of the reader" than would a press release stating that Hellenic employee Richard Moser orchestrated and executed the defamatory campaign unbeknownst to Hellenic or its director Nicholas Alexiadas. (Def. Counterclaim ¶ 9.2); *Dunlap v. Philadelphia Newspapers, Inc.*, 448 A.2d 6, 15 (Pa. Super. Ct. 1982). Therefore, Plaintiff's argument – that the press release is non-defamatory because it is substantially true – lacks merit. Accordingly, Count II of Defendants', Hellenic and Nicholas Alexiadas, Counterclaim meets the pleading requirements under Pennsylvania state law, and Plaintiff's motion to dismiss will be denied as to Count II of the Counterclaim.

    **C.    COUNTERCLAIM COUNT III - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

Count III of Defendant Nicholas Alexiadas's Counterclaim sets forth a state law intentional infliction of emotional distress claim. "To state a claim for intentional infliction of emotional distress under Pennsylvania law, a plaintiff must allege that (1) the defendant engaged in 'extreme and outrageous' conduct, (2) the 'conduct caused [the plaintiff] severe emotional distress,' and (3) the defendant 'acted intending to cause such distress or with knowledge that such distress was substantially certain to occur.'" *Watson v. Haverford Twp. Police Dep't*, 2011 WL 2200306 at *5 (E.D.Pa. June 6, 2011) (*quoting Brown v. Muhlenberg Twp.*, 269 F.3d 205, 218 (3d Cir. 2001)). "Courts have defined 'extreme and outrageous' quite narrowly, finding that the conduct must 'go beyond all possible bounds of decency, and [ ] be regarded as atrocious, and

---

party questions, may be considered without converting the motion to dismiss into one for summary judgment. *See Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir.2002); *U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir.2002).

utterly intolerable in a civilized community.'" *Id.* (*citing Reedy v. Evanson*, 615 F.3d 197, 231-32).

Plaintiff Colonial argues Count III of Defendant Nicholas Alexiadas's Counterclaim should be dismissed because his pleadings cannot meet the "extreme and outrageous" conduct requirement. Courts within this District have consistently held that, when reviewing a motion to dismiss a claim of intentional infliction of emotional distress under Rule 12(b)(6), an "extreme and outrageous" behavior determination is a preliminary matter for the court to decide. *Ruder v. Pequea Valley Sch. Dist.*, 2011 WL 1832794 at *11 (E.D.Pa. May 12, 2011) ("It is for the court to determine in the first instance whether the element of outrageousness has been met.") (citation omitted); *Mansman v. Tuman*, 970 F.Supp. 389, 403 (E.D.Pa. 1997) ("it is for the court to determine, as a preliminary matter, if the defendant's conduct is so extreme and outrageous as to permit recovery.").

"[Intentional infliction of emotional distress] in Pennsylvania is a tort reserved for the most extreme ranges of behavior." *Halterman v. Tullytown Borough*, 2011 WL 2411020 at *7 (E.D.Pa. June 14, 2011). Outrageousness only occurs where "[a] recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Id.* (*citing Hunger v. Grand Cent. Sanitation*, 670 A.2d 173, 177 (Pa. Super. Ct. 1996)).

In *Mansman*, the plaintiff alleged that the defendant intentionally tried to put her out of business by making allegations in public and in a lawsuit that the plaintiff committed professional malpractice and misconduct. Plaintiff claimed that this made it impossible for her to continue to practice in her profession and caused her severe emotional distress. 970 F.Supp. at

10

402. The court concluded that the alleged conduct was not "sufficiently outrageous to sustain a cause of action for intentional infliction of emotional distress." *Id*. at 403. The court further noted that "[i]n our society, it is not uncommon for people to try to force other people out of business and to make allegations in support of their efforts that they know, or should know, are untrue." *Id*.

Like the conduct in *Mansman*, Plaintiff Colonial's publishing a press release containing allegedly defamatory statements about Nicholas Alexiadas, and then refusing to retract said press release in the light of Richard Moser's affidavit and deposition admitting sole responsibility for posting the fake negative reviews can be deemed "boorish and unprofessional." *Halterman*, 2011 WL 2411020 at *7. However, Colonial's conduct cannot be considered "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Mansman*, 970 F.Supp. at 403 (citation omitted). Accordingly, the Intentional Infliction of Emotional Distress claim set forth in Count III of Defendant Nicholas Alexiadas's Counterclaim will be dismissed.

### D. COUNTERCLAIM COUNT IV - NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

Count IV of Defendant Nicholas Alexiadas's Counterclaim is for negligent infliction of emotional distress under Pennsylvania state law. "Under Pennsylvania law, the cause of action for negligent infliction of emotional distress is restricted to four factual scenarios: (1) situations where the defendant had a contractual or fiduciary duty toward the plaintiff; (2) the plaintiff was subjected to a physical impact; (3) the plaintiff was in a zone of danger, thereby reasonably experiencing a fear of impending physical injury; or (4) the plaintiff observed a tortious injury to

a close relative." *Wardlaw v. City of Philadelphia Street's Dep't*, 378 Fed.Appx. 222, 225 (3d Cir. 2010) (*quoting Toney v. Chester Cnty. Hosp.*, 961 A.2d 192, 197-98 (Pa. Super. Ct. 2008)) (internal quotations omitted). Defendant Nicholas Alexiadas' Counterclaim is devoid of any allegations that might bring this claim within one of these four scenarios. Accordingly, Count IV of Defendant Nicholas Alexiadas's Counterclaim will be dismissed.

**IV.    CONCLUSION**

For the foregoing reasons, Plaintiff's Motion to Dismiss Counterclaims shall be granted as to Counts III and IV, and denied as to Counts I and II.

An appropriate Order follows.

BY THE COURT:

/s/ Lynne A. Sitarski
LYNNE A. SITARSKI
UNITED STATES MAGISTRATE JUDGE