**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| NTP MARBLE, INC., t/a | : | CIVIL ACTION |
| COLONIAL MARBLE & GRANITE, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No.: 09-cv-05783 |
| | : | |
| AAA HELLENIC MARBLE, INC., | : | |
| NICHOLAS ALEXIADIS, | : | |
| RICHARD MOSER, | : | |
| Defendants. | : | |

**M E M O R A N D U M**

SITARSKI, M. J.                                                    February 24, 2012

Currently pending before the Court is a motion for summary judgment filed by

Defendants AAA Hellenic Marble, Inc., Nicholas Alexiadis and Richard Moser, Plaintiff's

Response, and Defendants' Reply.  For the following reasons, the motion will be **DENIED**.

I.      **FACTUAL BACKGROUND**

Defendants move for judgment in their favor as to Plaintiff's Lanham Act false

advertisement and defamation claims.  Defendants also seek judgment in their favor and against

Plaintiff and in Defendants' favor as to the same as stated in Defendants' Counterclaim.[1]  *See*

---

[1]  Defendants requested "Partial Summary Judgment" in their Motion.  Defendants
originally Answered Plaintiff's Second Amended Complaint with a four count counterclaim:
Lanham Act violation, defamation, intentional infliction of emotional distress and negligent
infliction of emotional distress.  (Doc. No. 56).  As further discussed below, the Court dismissed
Defendants' intentional infliction of emotional distress and negligent infliction of emotional
distress counterclaims.  (Doc. No. 76).  Thus, the only remaining claims asserted by either party
are false advertising under the Lanham Act and defamation.

Defs.' Mot. for Summ. J.

Both Plaintiff NTP Marble, Inc. t/a Colonial Marble and Granite ("Colonial" or "Plaintiff") and Defendant AAA Hellenic Marble, Inc. ("Defendant" or "Hellenic") are in the marble and granite installation business.  *See* Defs.' Mot. Partial Summ. J. ¶¶ 11-12.  Each provides retail service to predominantly residential customers looking to build and/or remodel counter-tops, walls, or floors in kitchens, bathrooms, and elsewhere with customized stone fabrication.  *Id.*  Colonial and Hellenic appear to be direct competitors, even though Hellenic has been in operation significantly longer.  *See*  Pl.'s Ans. Opp. to Defs.' Mot. Partial Summ. J. ¶ 12.

According to Colonial, in or about the summer of 2009, a "smear campaign" against Colonial took place, pursuant to which numerous "negative reviews" (herein referred to as the "Reviews") of Colonial's business appeared on websites such as Citysearch, Insiderpages, Yellowbot and Google (the "Websites").  *See* Compl. ¶¶ 12-17.  The Reviews set off alarm bells to Colonial, as, according to Colonial, the Reviews were far too numerous, and appeared in far too short of a time frame, to be legitimate.[2]  *See* Pl.'s Mem. Supp. Ans. Opp. to Defs.' Mot. Partial Summ. J. 9.  These Reviews criticized Colonial's customer service, on-site performance, and employment practices.  *Id.*  Concerned these Reviews were negatively affecting its business, on December 4, 2009, Colonial filed a Complaint against unknown Doe Defendants, claiming violations of the Lanham Act and defamation.  *Id.*  Colonial alleged that the Reviews were false and damaging to its business.  Defs.' Mot. Part. Summ. J. ¶ 1.

---

[2]  Plaintiff claims that they received more than a hundred negative reviews over the course of several months; a comparable business might only receive "ten in fifteen years."  *See* Pl.'s Memo. in Supp. of Ans. in Opp. to Defs.' Mot. for Partial Summ. J. 9, Ex. 15 at 66.

During discovery, Plaintiff issued subpoenas to the Websites, requesting information to aid Plaintiff in discovering the author(s) of these Reviews.  *See* Pl.'s Mot.  Dismiss 2.  Plaintiff thus learned that several Reviews came from computers having IP addresses belonging to Hellenic's business office and/or the residence of one of its alleged directors, Nicholas Alexiadis ("Alexiadis") (collectively with Defendant Hellenic, "Moving Defendants").[3]  *See* Pl.'s Mem. Supp. Ans. Opp. to Defs.' Mot. Part. Summ. J. 10-12.

On July 21, 2010, Plaintiff filed an Amended Complaint, naming Moving Defendants and Nicholas Alexiadis' wife Jessica as defendants.  *See* First Am. Compl.  At the same time, Plaintiff issued a statement (the "Press Release"), dated July 21, 2010, in which Plaintiff claimed that it discovered the source of these internet Reviews:  Moving Defendants.  In the Press Release, Plaintiff accuses Moving Defendants of "having launched an anonymous, deliberate and defamatory campaign against Colonial [] over the internet."  *See* Defs.' Countercl. ¶ 9.  The Press Release was disseminated in several local in-print and on-line publications throughout the summer and fall of 2010.  *Id.* at ¶¶ 9-13.

Meanwhile, on or about July 28, 2010, Defendant Richard Moser ("Moser"), at that time a Hellenic employee, drafted a statement (the "Statement").[4]  *Id.* at ¶ 14.  In the Statement, Moser

---

[3]  Alexiadis' role at Hellenic is disputed.  Plaintiff claims that Alexiadis is a director; Moving Defendants insist that Alexiadis is merely a managing agent.  *See* Defs.' Countercl. ¶ 5.1.

[4]  The document is titled an "Affidavit," but Plaintiff disputes that it is properly characterized as such.  *Compare* Pl.'s Second Am. Compl. *with* Pl.'s Mot. Dismiss.  Plaintiff points out that the Statement is not notarized.  Even though the document recites that Moser was "duly sworn," the document does not establish that Moser actually appeared in front of a person authorized to administer oaths.  Plaintiff, therefore, contends that this document is nothing more than a written statement that Moser made to his employer.

claims he had worked at Colonial during the summer of 2008, and he takes sole responsibility for posting the Reviews.  Moser claims he posted the Reviews because he was angry with Colonial for treating him poorly, and for denying him certain compensation while he was an employee at Colonial.  *Id.*  Moser claims that he posted all of the Reviews without the knowledge of Moving Defendants, even though he wrote many of these Reviews from Alexiadis' residence and Hellenic's place of business.[5]  *Id.*  According to Alexiadis, Moser approached him upon learning that Alexiadis' computer records had been subpoenaed, and confessed to writing the Reviews from the Alexiadis home without Alexiadis' knowledge.  *See* Pl.'s Ans. Opp. to Defs.' Mot. Partial Summ. J. Ex. 15 at 72:14 - 76:22.  Thus, Moving Defendants argue that because Moser has accepted responsibility for posting the Reviews, they are entitled to summary judgment.

Plaintiff disputes that Moser's Statement "confessing" to unilaterally posting the Reviews insulates Moving Defendants from liability.  Plaintiff notes that Moser disavows authorship of certain Reviews which were also posted through either IP addresses or internet accounts controlled by Moving Defendants.  Pl.'s Ans. Opp. to Defs.' Mot. Partial Summ. J. 2.  Furthermore, according to Plaintiff, Moser's credibility is subject to attack, as Moser has been in county jail several times since 2008, including for having pled guilty to *crimen falsi*.[6]  *Id.* at 4-5.

---

[5]  According to Moser's deposition testimony of April 4, 2011, Moser lived in the Alexiadis' home for a period of time in 2009 .  It was during this period that Moser had access to the Alexiadis' wireless internet router, and thus the reason why many of the Reviews were cross-referenced to the Alexiadis' IP address.  However, Moser claims to have used his own laptop to post the Reviews, not one of the four Alexiadis' computers at the Alexiadis' residence.  Moser no longer has this laptop; he claims it went missing when he was incarcerated in 2010.  *See* Pl.'s Mot. to Dismiss Ex. A at 28:16 - 28:23; 37:24 - 39:19.

[6]  At his deposition, Moser admitted he pled guilty to and was jailed for identity theft and forgery.  *See* Pl.'s Mot. to Dismiss Ex. A at 62:6 - 83:11.

4

Plaintiff thus contends that issues of fact preclude entry of summary judgment in favor of Moving Defendants.

## II.    PROCEDURAL HISTORY

On April 26, 2011, in light of the foregoing discovery and Moser's Statement, Plaintiff filed a Second Amended Complaint, dropping Jessica Alexiadis as a defendant and naming Richard Moser ("Moser") as a defendant.  (Doc. No. 54).  On May 9, 2011, Moving Defendants filed an Answer to Plaintiff's Second Amended Complaint, a Crossclaim against Moser and Counterclaim against Plaintiff, and on June 7, 2011, Defendant Moser filed an Answer to Plaintiff's Second Amended Complaint.[7]   (Docs. Nos. 56, 68).  Moving Defendants' four count Counterclaim against Plaintiff alleged Lanham Act violations, defamation, intentional infliction of emotional distress and negligent infliction of emotional distress arising out of the statements made by Plaintiff in its Press Release.  Defs.' Countercl. ¶¶ 19-42.

The matter was initially assigned to District Court Judge C. Darnell Jones, II and was then reassigned to District Court Judge Juan R. Sanchez.  (Doc. No. 22).  On May 12, 2011, the parties consented to this Court's jurisdiction.  (Doc. No. 57).

---

[7]  In their Answer to Plaintiff's Second Amended Complaint, Moving Defendants filed a Crossclaim against Moser.  (Doc. No. 56).  Although Richard Moser filed an Answer to Plaintiff's Second Amended Complaint, Moser did not file an Answer to Moving Defendants' Crossclaim asserted against him.  (Doc. No. 68).  Based upon review of the docket and the materials submitted on the present motion, it appears that Moving Defendants have not actively pursued their Crossclaim against Moser, and Moser apparently has not actively defended against that claim.  Moving Defendants have stated that they intend to pursue this Crossclaim.  *See* Tr. 1-27-2012 at 24-25.

On May 20, 2011, Plaintiff filed a Motion to Dismiss Counterclaims.  (Doc. No. 60).  A Response, Reply and Sur Reply were filed.  (Docs. Nos. 65, 71, 73-74).  On June 30, 2011, this Court denied Plaintiff's Motion as to Moving Defendants' Lanham Act and defamation counterclaims, but granted Plaintiff's Motion with respect to Moving Defendants' claims of intentional infliction of emotional distress and negligent infliction of emotional distress.  (Docs. Nos. 75-76).

On July 22, 2011, Plaintiff filed an Answer to Moving Defendants' remaining Counterclaims. (Doc. No. 77).  Plaintiff also served subpoenas on the Websites, seeking additional evidence relating to the Reviews.

On December 8, 2011, Moving Defendants filed this instant Motion for Partial Summary Judgment, in which Defendant Moser joined.  (Docs. Nos. 88-89).  On January 9, 2012 Plaintiff filed its Answer to Moving Defendants' Motion and a Response in Opposition to Moser's joinder. (Doc. No. 92).  On January 23, 2012, Moving Defendants filed a Reply.  (Doc. No. 95).  On February 15, 2012, Moving Defendants' filed a Supplemental Brief in Support of the Motion for Summary Judgment (Doc. No. 99).  On February 17, 2012, Plaintiff filed a Supplemental Brief in Support of its Opposition to the Motion for Summary Judgment (Doc. No. 101).  This motion is therefore ripe for disposition.


III.    **STANDARD OF REVIEW**

Summary judgment is only appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing

law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" if there is sufficient evidence from which a jury could find in favor of the non-moving party. *Id.*

It is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations. The court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) *(citing United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir. 1987). If a conflict arises between the evidence presented by both sides, the court must accept as true the allegations of the non-moving party, and "all justifiable inferences are to be drawn in his favor." *Liberty Lobby, Inc.*, 477 U.S. at 255.

The moving party bears the initial burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). Once the moving party carries this initial burden, the non-moving party must "come forward with specific facts showing there is a genuine issue for trial." *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. The non-moving party must present something more than mere allegations, general denials, vague statements, or suspicions. *Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs*, 982 F.2d 884, 890 (3d Cir. 1992); *Fireman's Ins. Co. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982). Instead, the non-moving party must present specific facts and "affirmative evidence in order to defeat a properly supported motion for summary judgment." *Liberty Lobby, Inc.*, 477 U.S. at 257.

When a witness's credibility is critical to supporting the facts relied upon to support summary judgment, the court must consider whether there are sufficient grounds for impeachment that would place the facts to which the witness testifies in legitimate dispute. *El v. SEPTA*, 479

7

F.3d 232, 237 (3d Cir. 2007).  Summary judgment is inappropriate when a case will turn on

credibility determinations, *McMillen v. Girard Sch. Dist.*, 2007 WL 954072, at *3 (W.D. Pa. Mar.

28, 2007) (*quoting Horowitz v. Fed. Kemper Life Assur. Co.*, 57 F.3d 300, 302 n.1 (3d Cir.

1995)).  Thus, "trial courts should act with 'caution in granting summary judgment . . . in a case

where there is reason to believe that the better course of action would be to proceed to a full

trial.'"  *McMillen*, 2007 WL 954072 at *3 (*quoting Liberty Lobby, Inc.*, 477 U.S. at 255).  A party

opposing summary judgment "cannot rest solely on assertions made in the pleadings, legal

memoranda, or at oral argument."  *El*, 479 F.3d at 247 (*citing Berckeley Inv. Group, Ltd. v.

Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006)).  The non-moving party may, however, produce

evidence, in the form of, for example, an expert who testifies against the moving party's witness

or depose the witness, to create a factual question for the jury to resolve.  *Id.*  In other words, if the

credibility of the movant's witness is challenged by the opposing party and specific bases for

possible impeachment are shown, summary judgment should be denied; however, there must be

more than mere allegations in a memorandum of law to place credibility in issue and preclude

summary judgment.  Specific facts must be produced.  *Sterling Nat. Bank & Trust Co. of New

York v. Federated Dept. Stores, Inc.*, 612 F. Supp. 144, 146 (S.D.N.Y. 1985).


**IV.   DISCUSSION**

This Court first addresses the legal principles that apply to Plaintiff's false advertising and

defamation claims. These standards are then applied to the parties' claims.

**A.      False Advertising under the Lanham Act**

To make out a false advertising claim under Section 43(a)(1)(B) of the Lanham Act, the

plaintiff must establish: "(1) the defendant has made false or misleading statements as to his or her or another's product or services; (2) there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; (3) the deception is material in that it is likely to influence purchasing decisions; (4) the advertised goods traveled in interstate commerce; and (5) there is a likelihood of injury to the plaintiff in terms of declining sales and loss of good will." *ZS Assocs., Inc. v. Synygy, Inc.*, 2011 WL 2038513, at *7 (E.D. Pa. May 23, 2011) (*quoting Synygy, Inc. v. Scott-Levin, Inc.*, 51 F. Supp. 2d 570, 575 (E.D. Pa. 1999)). The plaintiff must also prove that the commercial advertising, message or statement made was literally false, or literally true or ambiguous, but has the tendency to deceive customers. *See Santana Prods., Inc. v. Bobrick Washroom Equip., Inc.*, 401 F.3d 123, 136 (3d Cir. 2005). If the plaintiff proves literal falsity, there is no need to show that the buying public was misled. *Id.* (*citing Johnson & Johnson-Merck Consumer Pharm. Co. v. Rhone-Poulenc Rorer Pharm. Co.*, 19 F.3d 125, 129-30 (3d Cir. 1994)). If the message or statement is literally true or ambiguous but has the tendency to deceive, then the plaintiff must prove "that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience." *Id.*

Commercial advertising is defined as: "(1) commercial speech; (2) by a defendant in commercial competition with the plaintiff; (3) for the purposes of influencing consumers to buy the defendant's goods or services; and (4) that is sufficiently disseminated to the relevant purchasing public to constitute advertising or promotion within the industry." *ZS Assocs., Inc.*, 2011 WL 2038513 at *7 (*quoting Caldon, Inc. v. Advanced Measurement & Analysis Grp., Inc.*, 515 F. Supp. 2d 565, 578 (E.D. Pa. 2007)). "The form of the statements is not dispositive, and courts find statements to be commercial speech even where promulgated outside the traditional

advertising campaign." *Id.* (*quoting Accenture Global Servs. GMBH v. Guidewire Software, Inc.*, 581 F. Supp. 2d 654, 667 (D. Del. 2008)).  Factors used to determine whether speech is commercial include: (1) whether the speech is an advertisement; (2) whether the speech refers to a specific product or service; or (3) whether the speaker has an economic motivation for the speech. *See id.*; *see also Premier Comp. Solutions, LLC v. Workwell Physical Med., Inc.*, 2010 WL 4342247, at *3 (W.D. Pa. Oct. 27, 2010).

### B.     Defamation

"A statement is defamatory if it 'tends so to harm the reputation of another as to lower him or her in the estimation of the community or to deter third persons from associating or dealing with him or her . . . .'"  *Am. Bd. of Internal Medicine v. Von Muller*, 2011 WL 857337, at *8 (E.D. Pa. Mar. 10, 2011) (citations omitted).  To make out a claim for defamation, a plaintiff has the burden of proving:

> (1) [t]he defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm resulting to the plaintiff from its publication; and (7) abuse of a conditionally privileged occasion.

42 Pa. C.S. § 8343(a); *see also ZS Assocs., Inc.*, 2011 WL 2038513 at *3.  Though usually a plaintiff must plead a specific monetary loss to satisfy the "special harm" requirement of the statute, the special harm requirement is eliminated if the words constitute defamation per se. Defamation *per se* can be either "words imputing: (1) criminal offense, (2) loathsome disease, (3) business misconduct, or (4) serious sexual misconduct."  *See Cornell Cos., Inc. v. Borough of New Morgan*, 512 F. Supp. 2d 238, 271 (E.D. Pa. 2007) (*quoting Scott-Levin, Inc.*, 51 F. Supp. 2d at 580).  More specifically, "[a] statement is defamatory *per se* as an accusation of business

misconduct if it 'ascribes to another conduct, characteristics or a condition that would adversely affect his fitness for the proper conduct of his lawful business.'" *Scott-Levin, Inc.*, 51 F. Supp. 2d at 580 (*quoting Clemente v. Espinosa*, 749 F. Supp. 672, 677-78 (E.D. Pa. 1990)).

### C.    Analysis

Moving Defendants contend that there is no genuine issue of material fact regarding the underlying Lanham Act or defamation claims or counterclaims. This Court disagrees.

### 1.    Moser's Role in Posting the Reviews.

Of central importance to both the defamation and the Lanham Act claim is the contention that Moser, alone, is responsible for *all* of the fictitious Reviews posted on the Websites, and that Moving Defendants played no role whatsoever in the postings. Moving Defendants contend that the Moser Statement conclusively establishes this to be the case, and argue that Plaintiff has not come forward with any evidence to rebut the Statement. Plaintiff, on the other hand, attacks this assertion, and insists that a jury must decide whether Moser, acting alone, posted all of the Reviews.[8] This Court concludes that Plaintiff has successfully identified evidence from which a

---

[8] Plaintiff apparently intends to attack Moser's credibility based upon, *inter alia,* Moser's previous criminal activity, and the fact that numerous Reviews were posted from Defendant Alexiadis' home. *See* Pl.'s Mem. Ans. Opp. to Defs.' Mot. Partial Summ. J. 14-19; *see also* Tr., 1-27-2012 at 36-38. Moser testified that he cannot remember which Reviews he posted. Pl.'s Ans. Opp. to Defs.' Mot. Partial Summ. J. Ex. 2 at 14:21-20:23. He also testified that, while he may have posted some Reviews from Hellenic's offices, he did not use Hellenic's email accounts to do so. *Id.*; *see also* Tr. 1-27-2012 at 27.

"When a witness' credibility is critical to supporting the findings of fact relied upon to support summary judgment," we are required to consider "whether there are sufficient grounds of impeachment that would place the facts which [the witness will] testif[y to] in legitimate dispute," and summary judgment is inappropriate where such a question arises. *See McMillen*, 2007 WL 954072 at *3 (citations omitted). Plaintiff has challenged Moser's credibility through deposition testimony. *See El*, 479 F.3d at 247. Such testimony provides potential impeachment, and therefore summary judgment would be inappropriate here.

reasonable jury might conclude that Moser did not post all of the Reviews, and/or that he did so with the knowledge or encouragement of Moving Defendants.

Both parties have adduced evidence concerning the location from which the Reviews were posted.  In Plaintiff's response to the Motion, Plaintiff relies upon the report of it's expert witness, Jason P. Lisi (the "Lisi Report"), concerning the source of the Reviews.  *See* Pl.'s Ans. Opp. to Defs.' Mot. Partial Summ. J. 20-22; ¶¶ 15-24; Ex. 36.   In his report, Mr. Lisi states that through computer forensic analysis, he has determined that the Reviews came directly from not only Moving Defendants' IP addresses, but from Hellenic's two (2) business email accounts as well. *See* Pl.'s Second Am. Compl. ¶ 17-19; *see also* Pl.'s Ans. Opp. to Defs.' Mot. Partial Summ. J. 20-22; Ex. 36.  The Lisi Report describes the steps through which a Google account holder must proceed to post an online review of a business.  *Id.*  Mr. Lisi concludes that Moving Defendants' email addresses were the email addresses used to create one or more of the Google customer accounts that posted one or more of the Reviews that were identified in Plaintiff's subpoena of Google.[9]  *Id.*  As Plaintiff notes, this contradicts Moving Defendants' contention that Moser acted alone, as Moser stated during his deposition he never posted any Review from Hellenic's email addresses and is almost certain he did not post any Review from Hellenic's computers themselves. Pl.'s Opp. To Defs.' Mot. Partial Summ. J. Ex. 2 at 131:8-131:23.  Thus, according to Plaintiff, the Lisi Report creates a triable issue of fact on the question of whether Moser posted *all* of the

---

[9]The two accounts which were turned over to Plaintiff by Google were aaahellenicmarble@gmail.com and sales@aaamarble.com.  Alexiadis admits these are two email addresses controlled and operated by Hellenic.  *See* Pl.'s Ans. in Resp. to Defs.' Mot. for Partial Summ. J., Ex. 3, 38:9- 48:24.

Reviews, and whether he acted alone in posting them.  *See* Pl.'s Ans. Opp. to Defs.' Mot. Partial

Summ. J. Ex. 36.

    In response, Moving Defendants offer their own report, authored by G. Hunter Jones (the

"Jones Report").  *See generally* Defs.' Reply to Pl.'s Opp. to Defs.' Mot.; *see also id.* Ex. B.  Mr.

Jones opines that his computer forensic analysis (utilizing information relating to Google account

usage and IP addresses), conclusively establishes that Moving Defendant Hellenic could not be

responsible for the Reviews.  *Id.*   Indeed, Moving Defendants request the Court to take judicial

notice of the Jones Report's findings.  *See id.* at 1-6.  Moving Defendants claim the Jones Report

proves that Moser acted alone in posting the Reviews, and that Moving Defendants were not

involved.  *See* Defs.' Reply to Pl.'s Opp. to Defs.' Mot. Ex. B.[10] .

---

    [10]  The dispute implicates the significance of unique IP addresses and web-based email
accounts.  How these tools are obtained, maintained, monitored, controlled, and accessed are not
matters of "common knowledge," and thus it would be inappropriate for this Court to take
judicial notice of the Jones Report.

    Judicial notice is appropriate where the facts are "not subject to reasonable dispute
because: (1) [they] are generally known within the trial court's territorial jurisdiction; or (2) can
be accurately and readily determined from sources whose accuracy cannot reasonably be
questioned."  Fed. R. Evid. 201(b).  A court may take judicial notice of a fact on its own
initiative, and must take judicial notice of a fact if requested by one of the parties and the court
is supplied with the necessary information.  Fed. R. Evid. 201(c).  Courts have traditionally taken
judicial notice of facts of universal truth which cannot reasonably be controverted, such as
geography or weather.  *See In re Int'l Bldg. Components*, 161 B.R. 764, 766 (Bankr. W.D. Pa.
1993); *see also Easy Sportswear, Inc v. American Economy, Ins.*, 2008 WL 2682689, at *1
(W.D. Pa. July 1, 2008).   In other words, courts take judicial notice of matters of common
knowledge.  *Ohio Bell Tel. Co. v. Public Utilities Com.*, 301 U.S. 292, 301 (1937).  The
underlying evidence must be authenticated before it can be admitted.  *See Victaulic Co. v.
Tieman*, 499 F.3d 227, 236 (3d Cir. 2007); *see also In re K-Dur Antitrust Lit.*, 2008 WL
2660781, at *6 (D.N.J. Mar. 4, 2008); *see also Trevino v. Merscorp, Inc.* 583 F. Supp. 2d 521,
526 (D. Del. 2008).  Disputed evidence, such as competing expert forensic reports in information
technology and internet usage, is appropriately weighed by a jury, thus rendering summary
judgment inappropriate.  *See Liberty Lobby, Inc.*, 477 U.S. at 255-57; *see also Matsushita Elec.
Indus. Co.*, 475 U.S. at 587; *see also Fed. Labs., Inc. v. Barringer Research, Ltd.*, 696 F.2d 271,
274 (3d Cir. 1982) (court is not at liberty to disbelieve good-faith statements of experts presented

Taken together, the Jones and Lisi Reports raise genuine issues of material fact which bear directly on the issue of whether Moser (acting alone) posted all of the Reviews, or whether Moving Defendants played some role in posting at least some of the Reviews.  A jury must weigh the competing expert reports, and weigh the lay witness testimony relevant to each report.

Moreover, a significant factual issue exists concerning the substance of the Reviews. Whether the Reviews violate the Lanham Act, and whether the reviews are defamatory, are facts which must be decided by the jury after consideration of the evidence.  As noted above, a message is commercial advertising if it is commercial speech disseminated to the purchasing public made by a party in commercial competition with another to influence customers to buy one party's goods or services over the others.  *See ZS Assoc., Inc.*, 2011 WL 2038513 at *7.  If a party proves the message is false and deceitful or true or ambiguous but with a tendency to deceive, and the deception will influence the public's purchasing decisions, the Lanham Act has been violated.

---

by non-moving party in motion for summary judgment), *see also US Airways, Inc. v. Elliott Equip. Co.*, 2008 WL 4461847, at *2 (E.D. Pa. Sept. 29, 2008).

 Moving Defendants argue the Jones Report conclusively demonstrates that Moving Defendants could not have published the Reviews.  *See* Defs.' Reply to Pl.'s Opp. to Defs.' Mot. 1-2.  The Jones Report bases this conclusion on that expert's view of the way in which IP addresses are assigned and the way in which Google accounts operate.  The Jones Report also draws upon Hellenic's specific internal operating procedures.  *Id.*

 It is not proper to take judicial notice of highly technical information that figures prominently into questions of liability in this matter, such as how IP addresses and web-based accounts are obtained, managed, and protected.  *See Tieman*, 499 F.3d at 236 (noting that anyone may purchase internet address so discovery or authentication needed to determine to whom it belongs).  Moreover, an expert report which describes a private company's own business and its operation, is not the sort of "source[] whose accuracy cannot be reasonably questioned."  *Id.* Indeed, in its Response to the Motion, Plaintiff provides Moving Defendants and this Court with a competing theory, and therefore the theory advanced by Defendant has been directly questioned.  *See* Pl.'s Ans. Opp. to Defs.' Mot. Partial Summ. J. Ex. 36.

 For these reasons, this Court declines to take judicial notice of the expert reports stating "conclusively" that Moving Defendants could not have published the Reviews.

*See id.*; *see also Santana Prods., Inc.*, 401 F.3d at 136.  As to the defamation claim, a message is defamatory *per se* if it accuses another business of conduct, characteristics or a condition that would negatively affect that business' fitness for the proper conduct of its business.  *See Scott-Levin, Inc.*, 51 F. Supp. 2d at 280.

Under this standard, a jury could determine the Reviews constitute "false advertising" under the Lanham Act.  The Reviews were disseminated over the internet, and warned potential customers of Colonial's purported poor quality goods and workmanship.  The Reviews also suggested that customers take their business elsewhere, to more reputable marble and granite installation businesses.  The Reviews do not identify Hellenic by name; however, this is not required by the Lanham Act.  A Lanham Act violation may be found where the speech is commercial, refers to a specific product or service, and is motivated by economic interests.  *See Facenda v. N.F.L. Fims, Inc.*, 542 F.3d 1007, 1017-18 (3d Cir. 2005).  Where the Lanham Act violation is premised on "likelihood of confusion" arising out of commercial speech, such determination must be made by a jury, and summary judgment is inappropriate.  *See id.* at 1024 (*quoting Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1008 (9th Cir. 2001)).

There is evidence from which a jury might conclude that the Reviews affected Plaintiff's business.  As stated previously, speech is defamatory *per se* if the statement negatively affects the business, regardless of pecuniary harm or monetary loss.[11]  *See Cornell Cos., Inc.*, 512 F. Supp.

---

[11]  Moving Defendants also claim that summary judgment in their favor is appropriate because, they argue, Plaintiff has not provided this Court with evidence of actual damages on Plaintiff's Lanham Act violation and defamation claims.  At least for present purposes, this Court disagrees.

To show entitlement to damages under the Lanham Act, a plaintiff must show actual damages rather than a mere tendency to be damaged.  *Scott-Levin*, 51 F. Supp. 2d at 575 (*citing Rhone-Poulenc Rorer Pharm., Inc. v. Marion Merrell Dow, Inc.*, 93 F.3d 511 (8th Cir. 1996)).

2d at 271.  Here, Plaintiff intends to offer evidence from general contractors and salespersons, attesting that Plaintiff lost business and profits because of the reviews.  *See* Pl.'s Ans. in Opp. to Defs.' Mot. Partial Summ. J. Ex. 40-48.  Therefore, sufficient evidence has been presented to allow jury determination of this issue.

### 2.    Moving Defendants' Vicarious Liability

Plaintiff contends that Moving Defendants are vicariously liable for the acts of Moser, an employee of Hellenic at the time the Reviews were posted.  Moving Defendants dispute this, and argue that they are not vicariously liable because Moser was acting outside the scope of his employment in posting the reviews.  Moving Defendants submit they are thus entitled to summary judgment on this issue.  This Court disagrees.

An employee acts within the scope of his employment if:  "(a) it is the kind [the employee] is employed to perform; (b) it occurs substantially within the authorized time and space limits[; and] (c) it is actuated, at least in part, by a purpose to serve the master.'" *Conn v. United* States,76 Fed. Appx. 239, 241 (3d Cir. 2010); *see also CNA v. United States*, 535 F.3d 132, 146 (3d Cir. 2008).  Moreover, "[t]he mere existence of a personal motivation is insufficient to relieve the

---

In a claim of defamation *per se*, a plaintiff must only show competent proof of general damages, and need not prove special or monetary damages.

Plaintiff claims that they have lost customers and contracts because of the Reviews.  Plaintiff has presented evidence of this through reports and statements of Colonial salespersons and customers.  These reports and statements show loss of business and reputational harm to Colonial.  Moving Defendants challenge the admissibility of this evidence.  The court declines to rule on the admissibility of the evidence at this time.  If competent evidence is presented to the jury, it may be sufficient to establish customer motive, and a resultant decline in business.  *See Citizens Fin. Group, Inc. v. Citizens Nat'l Bank*, 383 F.3d 110, 133 (3d Cir. 2004) (*citing Callahan v. AEV, Inc.*, 182 F.3d 237, 252-53 (3d Cir. 1999)).  Thus, summary judgment on this basis is not appropriate.

employer from liability where the conduct also benefitted [the employer] and [the employee's conduct] was within the scope of employment generally." *CNA*, 535 F.3d at 147; *see also Ismael v. Ali*, 276 Fed. Appx. 156, 160 (3d Cir. 2008).  Conduct may also be within the scope of employment if done in part to serve the purposes of the employee or a third party.  *Ismael*, 276 Fed. Appx. at 159-60.  An employer may be held liable for the intentional acts of the employee. *See Brumfield v. Sanders*, 232 F.3d 376, 381 (3d Cir. 2000).  Generally, the existence of a master-servant relationship and whether an employee's conduct was in the scope of employment are factual issues for the jury.  *See Chuy v. Phila. Eagles Football Club*, 595 F.2d 1265, 1276 (3d Cir. 1979).

Moving Defendants argue that Moser, though an employee of Moving Defendant Hellenic, was not working as Hellenic's employee while posting the Reviews, because his position as a granite installer did not require him to access a computer on the company's time.  Moving Defendants thus argue that Moser was not acting within the scope of his employment.  *See* Defs.' Ans. & Countercl. ¶¶ 14-16; *see also* Tr., 1-27-2012 at 53-55.[12]  Plaintiff argues that Moser posted the Reviews, from Hellenic's location, to aid Hellenic's business interests by diverting customers away from Plaintiff and towards Moving Defendants, and therefore was acting within his scope of employment.  *See* Pl.'s Ans. Opp. to Defs.' Mot. Partial Summ. J. Ex. 2; *see also* Tr., 1-27-2012 at 55-56.[13]  The question of whether Moser was acting within the scope of his

---

[12]  Moser's employment status also bears on Plaintiff's Lanham Act claim against Moser, individually.  Moser claims that because he was a mere employee, and not a direct competitor, he cannot be held liable under the Lanham Act.  *See* Tr., 1-27-2012 at 25.

[13]  Plaintiff also notes that Moser was not terminated or disciplined for posting the Reviews.  Plaintiff views this as further evidence from which a jury might conclude that Moser was acting at the behest of Moving Defendants.  *See* Tr., 1-27-2012 at 36-38.  Whether such

employment is one that must be decided by a jury.  For this reason, summary judgment on the vicarious liability claims must be denied.

### 3.    Plaintiff's Liability for Press Release

Moving Defendants contend that the Press Release disseminated by Plaintiff violates the false advertising prong of the Lanham Act and is defamatory *per se*.  Moving Defendants assert that Moser acted alone and therefore Plaintiff's statements in the Press Release are literally false. Plaintiff denies this, arguing that, regardless of whether Moser acted alone, the statements in the Press Release are literally true.

To restate, there is a violation of the Lanham Act's False Advertising prong when a defendant made false or misleading statements regarding the defendant's or another's product(s) or service(s), there is actual deception or a tendency to deceive the audience, the deception is likely to influence purchasing decisions, interstate commerce is involved, and there is likelihood of reduced sales to the plaintiff.  *See ZS Assoc., Inc.*, 2011 WL 2038513 at *7.  The message must be literally false, or literally true or ambiguous, but with the tendency to deceive the customer. *See Santana Prods., Inc.*, 401 F.3d at 136.  If the message is not literally false, the Lanham Act plaintiff bears the burden of proving actual deception.  *See Sandoz Pharm. Corp. v. Richardson-Vicks, Inc.*, 902 F.2d 222, 228-29 (3d Cir. 1990).  A statement is defamatory *per se* if it accuses a plaintiff of business misconduct that is intended to and will adversely affect the plaintiff's business.  *See Von Muller*, 2011 WL 857337 at *8; *see also Scott-Levin, Inc.*, 51 F. Supp. 2d at 280.  "Where the language can be interpreted in both a defamatory and nondefamatory manner, the question is one for the jury to decide."  *Schiavone Constr. Co. v. Time, Inc.*, 847 F.2d 1069,

---

 inference can fairly be drawn is clearly a question for the jury.

1083 (3d Cir. 1988).

Plaintiff announced in the Press Release that Plaintiff recently had determined the

identities of the posters "who have launched an anonymous, deliberate, defamatory campaign

against [Plaintiff] over the internet."  *See* Defs.' Countercl. ¶¶ 9-13; Ex. A.  Plaintiff believed that

"competitors . . . falsely posing as former [Colonial] customers" posted the Reviews to damage

Plaintiff's business, and Plaintiff subsequently narrowed this down to Moving Defendants.[14]  *Id.*

Moving Defendants argue that such speech violates the Lanham Act because it created

confusion among its intended audience and purchasing public regarding Moving Defendants'

business reputation.  *See* Defs.' Answer ¶¶ 19-25.  Moving Defendants also argue that the Press

Release is defamatory because they suffered lost sales and revenue.  *See id.* at ¶¶ 26-31.  They

assert that Plaintiff "clearly" intended to persuade consumers to purchase Plaintiff's goods and

services over Moving Defendants' goods and services.  *See* Defs.' Mem. Supp. Opp. Pl.'s Mot. to

Dismiss 9-10.  Moving Defendants therefore conclude that, because the Press Release both

promotes Colonial's goods and services and disparages Hellenic's goods and services,  the

statements made in the Press Release are defamatory and actionable commercial speech under the

Lanham Act.  *Id.* at 9-14.  Moving Defendants further conclude that because Moser confessed to

have posted the Reviews himself, the Press Release was literally false at the time it was

disseminated in numerous publications.  Defs.' Answer ¶¶ 9-14;19-25.

Plaintiff, on the other hand, asserts that a lack of secondary meaning of the Press Release

precludes the Press Release from being covered under the Lanham Act.   *See* Pl.'s Reply to Defs.'

---

[14]  Plaintiff contends in the Press Release that the "perpetrator" was Hellenic and its
"director," Alexiadis.  *See* Defs.' Countercl. ¶ 5.1.

Opp. 4-7.  Plaintiff also argues that the Press Release is not actually commercial speech.  *Id.*
Plaintiff further contends that the statements are not literally false, but were based upon the results
of a lengthy investigation, in which Plaintiff learned the digital identities of all posters of the
Reviews.[15]  *See id.*; *see also*  Pl.'s Mot. Dismiss 5-12.  Plaintiff argues that, even if Moser acted
unilaterally and posted the Reviews himself, the statements made in the Press Release remain true,
because Moser was acting within the scope of his employment.  *See* Pl.'s Reply to Defs.' Opp. 9-
10.

    Based on the foregoing, this Court cannot make the determination that the Press Release
either violates the Lanham Act or is defamatory *per se.*   As discussed above, Plaintiff has
provided evidence, in the form of export reports and deposition testimony, from which a jury
might conclude that the statements in the Press Release are not literally false, but substantially
true.  This is contested by Moving Defendants.  Whether the statements made in the Press Release
are substantially true or false hinge on the determination of the underlying facts (as previously
discussed), and these facts must be determined by a jury.  Accordingly, summary judgment must
be denied.

_____

[15]  After filing its initial Complaint, Plaintiff issued subpoenas to the Websites to
determine who had posted the Reviews.  Pl.'s Mem. Supp. Ans. Opp. to Mot. Summ. J. 10-12.
Two of the Websites, in response to the subpoenas, produced documents indicating that the same
IP address was used for many of the Reviews.  *Id.*  Google responded with both IP addresses and
accounts used to publish the Reviews, which linked Hellenic's Google account to the Reviews
and linked Alexiadis' home IP address to the Reviews.  *Id.*; *see also* Pl.'s Ans. Opp. to Mot.
Summ. J. Ex. 36.  As the Reviews were thus linked to Moving Defendants, Plaintiff issued the
Press Release upon the discovery of this information.

## V.    CONCLUSION

Question of material fact exist, thus rendering summary judgment inappropriate in favor of Moving Defendants and against Plaintiff for either of the Lanham Act or defamation claims.  For the foregoing reasons, Defendants' Motion for Partial Summary Judgment is **DENIED**.  An appropriate Order follows.


BY THE COURT:


 /s/ Lynne A. Sitarski
LYNNE A. SITARSKI
UNITED STATES MAGISTRATE JUDGE